UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**PAUL KORTHAS,**

                    Plaintiff,

          v.                                                      5:03-CV-552 (HGM/DEP)

**NORTHEAST FOODS, INC., AUTOMATIC ROLLS
OF NEW YORK, and ROBERT BLAUVELT,**

                    Defendants.

_____

**APPEARANCES:**                                  **OF COUNSEL:**

GEORGE S. MEHALLOW, ESQ.
Attorney for Plaintiff
2700 Bellevue Avenue
Syracuse, New York 13219

BOND, SCHOENECK & KING, PLLC              THOMAS G. ERON, ESQ.
Attorneys for Defendant Northeast Food, Inc.
One Lincoln Center
Syracuse, New York 13202

MILES & STOCKBRIDGE P.C.                  KATHLEEN PONTONE, ESQ.
Attorneys for Defendant Northeast Foods, Inc.    JUSTIN C. ELLER, ESQ.
10 Light Street
Baltimore, Maryland 21202-1487

NORMAN J. CHIRCO, ESQ.
Attorney for Defendant Robert Blauvelt
95 Genesee Street
Auburn, New York 13021

**HOWARD G. MUNSON**
**Senior United States District Judge**

**MEMORANDUM - DECISION AND ORDER**

          Plaintiff, Paul Korthas ("Korthas"), brings this complaint seeking redress for intentional

infliction of emotional distress, defamation, tortious interference with contract, malicious

prosecution, and false imprisonment, stemming from a dispute with his former employer, defendant,

Northeast Foods, Inc. ("Northeast Foods") and a coworker, defendant Robert Blauvelt ("Blauvelt").

*See* Dkt. No. 1, Compl.; Dkt. No. 6, Am. Compl.; Dkt. No. 7, Pl.'s Mem. of Law at 2.  Plaintiff filed

his complaint in the Supreme Court of the County of Cayuga, State of New York against Northeast

Foods, Automatic Rolls of New York ("Automatic Rolls"), a division of Northeast Foods, and

Blauvelt, a non-management employee of Automatic Rolls (collectively "defendants").  Northeast

Foods and Automatic Rolls removed the action to the Northern District of New York.  *See* Dkt. No.

1, Notice of Removal.  Currently pending before the court are: (1) defendants' motion to dismiss

Korthas' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the

alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil procedure,[1]  *see*

Dkt. No. 3, Notice of Mot.; and (2) Korthas' cross-motion to amend the complaint pursuant to Rule

15(a) of the Federal Rules of Civil Procedure and New York Civil Procedure Law and Rules Section

3025(a) and (b) or in the alternative, to remand the case to state court pursuant 28 U.S.C. § 1447(c).

*See* Dkt. No. 6, Notice for Cross Mot.  For the reasons that follow below, Korthas' motion to amend

his complaint is GRANTED, Korthas' motion to remand the case to state court is DENIED, and

defendants' motion to dismiss Korthas' complaint, or in the alternative, for summary judgment is

GRANTED.

## BACKGROUND

Northeast Foods operated a bakery in Auburn, New York under the name Automatic Rolls,

which has since been sold.  Dkt. No. 5, Defs.' Statement of Material Facts at ¶ 1.  Northeast Foods

employed hourly workers at its Automatic Rolls facility in a bargaining unit represented by the

Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, Local 116

("Union"), pursuant to a collective bargaining agreement ("CBA") effective from April 6, 1999,

---

[1]Northeast Foods and Automatic Rolls filed the motion and Blauvelt joined in their motion for summary judgment and in opposition to Korthas' cross-motion.  *See* Dkt. No. 11, Notice of Mot.

through April 6, 2004.  Dkt. No. 5, Defs' Statement of Material Facts at ¶ 2.  The CBA established the terms and conditions of employment for bargaining unit employees.  Id. at ¶ 3.  Northeast Foods employed Korthas within the bargaining unit, and consequently, while he was employed by Northeast Foods, the CBA governed the terms of Korthas' employment.  *See* id. at ¶¶ 4, 6.  Northeast Foods discharged Korthas on March 26, 2002, after having received a report that he had threatened to physically harm certain co-workers.[2]  *See* id. at ¶ 5.  After he was terminated, Korthas filed a grievance with the Union. The Union, however, citing Korthas' "intimidating" and "threatening" conduct, which included, *inter alia*, threats to kill his supervisor and threats to stab co-workers, declined to pursue the grievance on his behalf.  *See* id. at ¶ 7 and Ex. C.  Korthas subsequently filed a Charge against Northeast Foods with the National Labor Relations Board ("NLRB"), claiming that Northeast Foods had discriminated against him on the basis of his protected union activities in violation of the National Labor Relations Act, 29 U.S.C. §§ 151-169 ("NLRA"), and the CBA by calling the Auburn Police Department ("Police"), having him removed from the bakery, and terminating his employment. *See* id. at ¶ 8.  The NLRB dismissed the Charge, finding that Northeast had acted reasonably in calling the police and in terminating Korthas' employment: "the [NLRB's] investigation disclosed that [Northeast Foods] acted out of concern for the safety and welfare of its workforce after it had received information that [Korthas had] . . . display[ed] a knife in a menacing fashion and after employees reported that you had made threatening statements to do harm to others."  *See* id. at ¶ 9 and Ex. E.  In addition, Korthas filed a Charge with the NLRB against the Union, alleging, *inter alia*, that the Union refused to pursue a grievance on his behalf regarding his termination.  *See* Dkt. No. 5, Defs.' Statement of Material

---

[2]Korthas, while purportedly admitting this fact in the fifth paragraph of his Statement of Material Facts, apparently disputes this fact, although his denial appears in the sixth paragraph of his Statement of Material Facts.  The dispute, however, is minor with Korthas submitting that Northeast Foods discharged him after he was removed from its property in handcuffs by the Auburn Police and charged with harassment.  *See* Dkt. No. 8, Pl.'s Statement of Material Facts at ¶¶ 5-6.

Facts at ¶ 10.

Defendants move for summary judgment arguing that Korthas' complaint setting forth alleged violations of various state laws is but an end-run around the grievance procedures outlined in the CBA as well as the procedural requirements of the NLRA.  *See* Dkt. No. 4, Defs.' Mem. of Law at 2.  Defendants argue that Korthas' claims must be dismissed because they are preempted and time-barred by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and they are preempted by the NLRA.  Furthermore, defendants argue that even if the state law claims are not preempted, they fail on the merits.  *See* id.  Korthas opposes defendants' motion and maintains that the LMRA does not preempt his state tort claims, and that with the absence of a federal question to adjudicate, the court should remand his case to the state court.  *See* id. at 3.

## DISCUSSION

### I.      Plaintiff's Cross-Motion to Amend the Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading by leave of the court . . . and leave shall be freely given when justice so requires."  FED.R.CIV.P. 15(a).  Rule 15(a) affords the court discretion to grant or deny a motion to amend a complaint, *see* New York State Nat'l Org. for Women v. Cuomo, 182 F.R.D. 30, 36 (S.D.N.Y.1998), but "there must be good reason to deny the motion." Acito v. Imcera Group, Inc., 47 F.3d 47, 55 (2d Cir.1995) (citation omitted).

Here, defendants appear to direct their opposition not toward Korthas' motion to amend his complaint, but rather toward Korthas' request to remand the case to state court.  In Korthas' amended complaint, the court observed only minor modifications to the original complaint, and the court can detect no undue prejudice to defendants by permitting Korthas to amend his complaint. Based upon these considerations, the court GRANTS Korthas' cross-motion to amend his complaint.

## II.    Motion to Dismiss

When matters outside the pleadings are presented in connection with a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must, with the exception of certain narrowly-defined materials, either exclude the additional material and decide the motion on the complaint alone, or convert the motion to one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and afford all parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED.R.CIV. P. 12(b); *see also* Friedl v. City of New York, 210 F. 3d 79, 83 (2d Cir. 2000). The Second Circuit strictly enforces "the conversion requirement of Rule 12(b)(6) where there is a legitimate possibility that the district court relied on inappropriate material in granting the motion." Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999). The conversion requirement's purpose is to ensure that "courts will refrain from engaging in fact-finding when considering a motion to dismiss, and also that plaintiffs are given a fair chance to contest defendants' evidentiary assertions." Amaker, 179 F.3d at 50.

It appears that defendants drafted their motion as one seeking summary judgment, including various materials outside the complaint, and that plaintiff tailored his opposition to defeat a motion for summary judgment. Accordingly, the court will analyze defendants' motion as one seeking summary judgment.

## III.    Summary Judgment Standard

The standard for summary judgment is familiar and well-settled. Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure

the just, speedy and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L. Ed. 2d 265 (1991) (quoting FED.R.CIV.P. 1).  A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist.  *See* <u>Thompson v. Gjivoje</u>, 896 F.2d 716, 720 (2d Cir.1990).  In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party.  *See* <u>Thompson</u>, 896 at 720; <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L. Ed. 2d 176 (1962) (per curiam).  If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).  The role of the court on a motion for summary judgment is not to try issues of fact but only to determine whether there are issues of fact to be tried. *See*, *e.g.*, <u>Anderson</u>, 477 U.S. at 255, 106 S.Ct. at 2513; <u>Gallo v. Prudential Residential Services, Limited Partnership</u>, 22 F.3d 1219, 1223-24 (2d Cir.1994);<u>Donahue v. Windsor Locks Board of Fire Commissioners</u>, 834 F.2d 54, 58 (2d Cir.1987).  The drawing of inferences and the assessment of the credibility of the witnesses remain within the province of the finders of fact.  To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986).  A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510.  When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper.  *See* <u>Anderson</u>, 477 U.S. at 250-251, 106 S.Ct. at 2511.

**IV.    Federal Subject Matter Jurisdiction and Preemption**

      *A.    Well-Pleaded Complaint*

Korthas raised only state law claims in both his state court and amended complaints.  As a

general rule, a suit seeking recovery under state law is not transformed into a suit "arising under" federal law merely because, to resolve it, the court may need to interpret federal law.  *See* Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429-30, 96 L.Ed.2d 318 (1987) (explaining that in the context of removal, only state court actions that could have been filed in federal court in the first instance may be removed to federal court); Gully v. First Nat'l Bank, 299 U.S. 109, 115, 57 S.Ct. 96, 81 L.Ed. 70 (1936) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit.").   This principle informs the "well-pleaded-complaint rule," which prescribes that federal subject-matter jurisdiction can be founded only on those allegations in a complaint that are "well pleaded."  Sullivan v. American Airlines, Inc., 424 F.3d 267, 271 (2d 2005) (citing Rivet v. Regions Bank of La., 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998)); Caterpillar, 482 U.S. at 392, 107 S.Ct. 2425.  Under the "well-pleaded complaint rule," the plaintiff is the "master of the claim," in that he or she may avoid federal jurisdiction by exclusive reliance on state law in drafting his or her claims.  Caterpillar, 482 U.S. at 392, 107 S.Ct. 2425; *see also* Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 809, n. 6, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.").  While federal preemption may be raised as a defense to allegations set forth in a plaintiff's well-pleaded complaint, Caterpillar, 482 U.S. at 392, 107 S.Ct. 2425, it is well settled that "[a] case may not be removed to federal court on the basis of a defense of federal preemption, even if the defense is anticipated in the complaint, and even if preemption is the only issue in the case."  Foy v. Pratt & Whitney Group, 127 F.3d 229, 232 (2d Cir.1997) (citation omitted).  "The well-pleaded-complaint rule mandates that in assessing subject-matter jurisdiction, a federal court must disregard allegations that a well-pleaded complaint would not include–e.g., allegations about anticipated defenses."  Sullivan, 424 F.3d at 271 (citing Rivet, 522 U.S. at 475, 118 S.Ct. 921 ("A defense is not part of a plaintiff's properly pleaded statement of his

or her claim.")).    Therefore, a plaintiff's complaint's mere allegation that the defendant's (anticipated) federal defense should fail is insufficient to create federal subject-matter jurisdiction. Id. (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

      B.    *Artful Pleading*

      "While the well-pleaded-complaint rule directs federal courts to disregard certain elements of a complaint in assessing federal subject-matter jurisdiction, federal courts sometimes do the inverse: read into a complaint elements that the plaintiff omitted." Id. "The artful-pleading doctrine, a corollary to the well-pleaded-complaint rule, rests on the principle that a plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." Id. (citations omitted). When confronted with such an artfully (*i.e.*, misleadingly) pleaded complaint, the court may construe the complaint as if it raised the federal claim that actually underlies the plaintiff's suit. Id. (citing Rivet, 522 U.S. at 475, 118 S.Ct. 921).

      The artful-pleading doctrine includes within it the doctrine of complete preemption. Id. (citing Rivet, 522 U.S. at 475, 118 S.Ct. 921 ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim.")). Where the preemptive force of a federal statute is so extraordinary that it effectively "converts an ordinary state law common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," Caterpillar, 482 U.S. at 393, 107 S.Ct. 2425, a removing party may invoke the complete preemption doctrine. "When a plaintiff raises such a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." Sullivan, 424 F.3d 272 (footnote omitted). The Supreme Court has found that only three statutes have the requisite extraordinary preemptive force to support complete preemption,

including § 301 of the LMRA.  *See* <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 8, 123 S.Ct.

2058, 2063, 156 L.Ed.2d 1 (2003); <u>Caterpillar</u>, 482 U.S. at 393-94, 107 S.Ct. 2425; <u>Avco Corp. v.</u>

<u>Aero Lodge No. 735</u>, 390 U.S. 557, 558-62, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

       *C.*     *Preemption under Section 301 of the LMRA*

      Section 301 of the LMRA provides: "[s]uits for violation of contracts between an employer

and a labor organization representing employees . . . may be brought in any district court of the

United States having jurisdiction of the parties, without respect to the amount in controversy or

without regard to the citizenship of the parties." 29 U.S.C. § 185(a).  Reasoning that "'[s]tate law

does not exist as an independent source of private rights to enforce collective bargaining contracts,'"

the Supreme Court has recognized that where a clause in the CBA lies at the "heart of the state-law

complaint," that complaint arises under federal law.  <u>Caterpillar</u>, 482 U.S. at 394 (quoting <u>Avco</u>

<u>Corp. v. Machinists</u>, 376 F.2d 337, 340 (6th Cir.1967).  "If even one claim is subject to the complete

preemption doctrine, then federal jurisdiction exists over that claim, supplemental jurisdiction exists

over the others (unless those claims 'substantially predominate over the claim or claims over which

the district court has original jurisdiction,' 28 U.S.C. § 1367(c)(2)), and the case may remain in

federal court." <u>Meier v. Premier Wine & Spirits, Inc.</u>, 371 F.Supp.2d 239, 245-46 (E.D.N.Y. 2005).

      Section 301 preemptively governs claims "founded directly on rights created by [CBAs], and

also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" <u>Caterpillar</u>,

482 U.S. at 394 (quoting <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916,

85 L.Ed.2d 206 (1985)); <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 405- 06, 108 S.Ct.

1877, 1881, 100 L.Ed.2d 410 (1988) ("[I]f the resolution of a state-law claim depends upon the

meaning of a [CBA], the application of state law . . . is pre-empted . . . .").  Section 301 preempts

a plaintiff's state-law claims where "evaluation of the tort claim is inextricably intertwined with

consideration of the terms of the labor contract." <u>Allis-Chalmers</u>, 471 U.S. at 213, 105 S.Ct. 1904.

In other words, "'where the resolution of the state law claim depends on an *interpretation* of the collective bargaining agreement,'" the LMRA preempts that claim, Foy, 127 F.3d at 233 (quoting Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 260-62, 114 S.Ct. 2239, 2248, 129 L.Ed.2d 203 (1994)), including claims "alleging liability in tort." Allis-Chalmers, 471 U.S. at 211, 105 S.Ct. at 1911. However, "the bare fact that a [CBA] will be consulted in the course of the state-law litigation plainly does not require that the claim be extinguished." Foy, 127 F.3d at 233 (quoting Livadas v. Bradshaw, 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994)); Alcantara v. Allied Properties, LLC, 334 F.Supp.2d 336, 340-43 (E.D.N.Y. 2004) (explaining that "when the nature of the dispute is fact-intensive, the review of the [CBA] is not an "interpretation" requiring preemption). The Second Circuit Court of Appeals has allowed that the "boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive." Vera v. Saks & Co., 335 F.3d 109, 115 (2d Cir.2003).

To determine whether the LMRA preempts Korthas' claims, the court "begin[s] with the elements of . . . plaintiff's state law claim[s]." Foy, 127 F.3d at 233 (citing Lingle, 486 U.S. at 405-06, 108 S.Ct. at 1881). In the instant case, Korthas' complaint sets forth five causes of action under New York State Law: (1) intentional infliction of emotional distress; (2) defamation; (3) tortious interference with contract; (4) malicious prosecution; and (5) false imprisonment.

    D.    *Preemption and Korthas' Claims*

        1.    Intentional Infliction of Emotional Distress

As his first cause of action, Korthas alleges that defendants "falsely and wrongfully" caused his arrest and that they "acted willfully, maliciously . . . and in wanton disregard" of his rights. Dkt. No. 6, Am. Compl. at ¶ 18. To state a claim of intentional infliction of emotional distress, a plaintiff must establish: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."

Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996).  Whether defendants' conduct in investigating and reporting Korthas' actions and terminating him for such action requires the court to construe Northeast Foods' rights and duties under the CBA.  A determination of whether defendants' alleged conduct constitutes extreme and outrageous conduct "depends upon whether defendants' conduct was prohibited or condoned by the terms of the collective bargaining agreement."  Seaver v. Yellow Freight System, Inc., 1996 WL 622639, at *4-*5 (W.D.N.Y. Aug. 22, 1996) (claim for intentional infliction of emotional distress preempted by § 301 where determination of whether conduct was "outrageous" or "extreme" depended upon whether defendants' conduct was prohibited by the "just cause" provision of the CBA).

The CBA at bar addresses Northeast Foods' rights and duties with respect to disciplining its employees and resolving employment disputes.  Specifically, the CBA provides that Northeast Foods "shall not discharge or suspend any Employee who has completed his probationary period without just cause." Dkt. No. 5, Ex. B at 12.  The CBA also vests in Northeast Foods, *inter alia*, the right to "formulate and enforce plant rules and regulations," and the right to "suspend, . . . demote, . . . discharge and relieve employees from duty because of . . . legitimate reasons."  Id. Ex. B at 18. The CBA provides that Northeast Foods "shall have the right to discharge or discipline any employee for just cause, such as *but not limited to*: dishonesty, smoking (except in authorized areas), intoxication, drinking or gambling on [Northeast Foods'] premises, or direct refusal to obey orders by [Northeast Foods]." Dkt. No. 5, Ex. B at 18 (emphasis added).  Moreover, the CBA requires employees

> to comply with all Federal, State and Local Safety and Health Regulations brought to their attention and implemented by [Northeast Foods].  Refusal to comply and cooperate on the part of any employee shall be cause for disciplinary action up to dismissal . . . [Northeast Foods] reserves the right to formulate and effectuate rules for the conduct of employees which are not inconsistent with the [CBA].

Id. Ex. B at 14.  Finally, the CBA invests in Northeast Foods a parallel duty to provide its employees

with a safe work environment.  The tenor of the CBA is to ensure "industrial peace" and to that effect, the parties to the CBA recognized that "without mutual understanding, harmony and cooperation among employees and between employees and employer, it is impossible to operate a bakery business with the economy and efficiency indispensable to its' [sic] existence and to the best interests of its' [sic] employees."  Id. Ex. B at 3.

The court concludes that Korthas' intentional infliction of emotional distress claim as to Northeast Foods is inextricably intertwined with the CBA such that an interpretation of the CBA is required.  The allegedly outrageous conduct, Northeast Foods' investigating and reporting Korthas' conduct to the Police, was condoned by the CBA, which authorizes Northeast Foods to discipline or discharge its employees for legitimate reasons or just cause, and requires cooperation between employees.  As to Blauvelt, in reporting to his superiors Korthas' threats, he acted in a manner consistent with the CBA's objectives of industrial peace and harmony among employees; however, the CBA apparently imposed no duty upon Blauvelt to report the incident and thus the court finds that resolution of the intentional infliction of emotional distress claim is not substantially dependent on analysis of the CBA.

Therefore, Korthas' intentional infliction of emotional distress claim as to Northeast Foods is preempted by § 301 of the LMRA.  See Scott v. Machinists Auto. Trades District Lodge No. 190 of Northern California, 827 F.2d 589, 594 (9th Cir. 1987) ("[S]tate tort claims for intentional infliction of emotional distress are preempted when they arise out of the employee's discharge or the conduct of the defendants in the investigatory proceedings leading up to the discharge."); Heaning v. Nynex-New York, 945 F.Supp. 640, 646 (S.D.N.Y. 1996) ("Because the allegedly outrageous conduct in this instance was defendant's breach of a duty arising under the CBA, preemption applies whether plaintiff formulates his claim as one for breach of contract or for the intentional infliction of emotional distress."); Sherwin v. Indianapolis Colts, Inc., 752 F.Supp. 1172,

1178-79 (N.D.N.Y. 1990) (explaining that plaintiffs' claim for intentional infliction of emotional distress was "substantially dependent" upon the CBA and therefore preempted).  As to Blauvelt, the court exercises its supplemental jurisdiction, *see infra*, over the claim.  *See* Meier, 371 F.Supp.2d at 245-46.  Although the court need not proceed any further, *see* id., the court continues its analysis.

### 2. Defamation

As his second cause of action, Korthas alleges that "[u]pon information and belief, plaintiff was alleged by the defendants to have threatened . . . Blauvelt with [sic] pocket knife."  Dkt. No. 6, Am. Compl. at ¶ 22.  Korthas alleges that as a result of defendants' conduct, the Police arrested and detained him and Northeast Foods terminated his employment.  Id. at ¶ 24.  Korthas' amended complaint omits who made the allegedly defamatory comment, to whom the comment was made, and the context in which it was made.  In New York, to prevail on a claim for defamation, a plaintiff must establish the following elements: "(1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) published [without privilege, *see* Matthews v. Malkus, 377 F.Supp.2d 350, 357 (S.D.N.Y. 2005) (citation omitted)] to a third party by the defendant; and (4) resulting in injury to the plaintiff."  Marinaccio v. Boardman, 2005 WL 928631, at *26 (N.D.N.Y. Apr. 19, 2005) (citation omitted).  "The gravamen of an action alleging defamation is an injury to reputation."  Celle v. Filipino Reporter Enters., 209 F.3d 163, 177 (2d Cir. 2000).  "[A] defamatory statement . . . exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'"  Celle, 209 F.3d at 177 (citing Kimmerle v. New York Evening Journal, 262 N.Y. 99, 186 N.E. 217, 218 (1933); Golub v. Enquirer/Star Group, Inc., 89 N.Y.2d 1074, 659 N.Y.S.2d 836, 681 N.E.2d 1282, 1283 (1997)).

Here, the third element, publication to a third party by the defendant, implicates the manner in which Northeast Foods responded to Korthas' conduct. In examining Northeast Foods' response to Korthas' conduct, the court must assess Northeast Foods' duties and obligations under the CBA. As noted above, the CBA vests in Northeast Foods various duties and rights including the duty to not discharge an employee without just cause" and the right to "discharge and relieve employees from duty because of . . . legitimate reasons." Dkt. No. 5, Ex. B at 18. Moreover, the CBA invests in Northeast Foods a duty to provide its employees with a safe work environment, while employees are required to "comply with all Federal, State and Local Safety and Health Regulations." The tenor of the CBA is to ensure "industrial peace."

In light of these rights and duties, the court concludes that Korthas' defamation claim is inextricably intertwined with the CBA. The CBA authorized Northeast Foods to make the statement attributed to it by Korthas to, the court presumes, the Police, Korthas and Korthas' Union. Upon learning from Blauvelt of Korthas' threats, Northeast Foods opted to relieve him from duty for a legitimate reason and terminate him for just cause. As to the alleged defamatory statement made to Korthas and/or Korthas' Union, the CBA required Northeast Foods to articulate the legitimate reason and just cause for its disciplinary actions. *See* Dkt. No. 5, Ex B at 12; Ex. B at 18. The court concludes that whether Northeast Foods articulated legitimate reasons and just cause consistent with the CBA requires not mere consultation with the CBA, but rather an interpretation of the CBA. In addition, as to the alleged defamatory statement made to the Police, the CBA imposes a duty upon Northeast Foods to provide its employees with a safe work environment and to ensure industrial peace. Given that the alleged threats involved a knife, Northeast Foods' resort to calling the Police seems reasonable, if not prudent, but surely consistent with Northeast Foods' duties as proscribed by the CBA. Consequently, whether Northeast Foods' reporting Korthas' actions to the Police requires an interpretation of the CBA. As to Blauvelt, in reporting to his superiors Korthas' threats,

14

he acted in a manner consistent with the CBA's objectives of industrial peace and harmony among employees. The court, however, finds that resolution of the defamation claim is not substantially dependent on analysis of the CBA.

Korthas' defamation claim is preempted by § 301 of the LMRA as to Northeast Foods. *Cf.* Stafford v. TrueTemper Sports, 123 F.3d 291, 296 (5th Cir. 1997) (holding state law defamation claims preempted under § 301 where alleged defamatory statements were made in connection with investigation into appropriateness of dismissal under labor contract); Bagley v. General Motors Corp., 976 F.2d 919, 921 (5th Cir.1992) (noting that holding a company liable for defamation based on statements made in connection with internal investigation and suspension procedures would render a company unable to ever undertake such investigation). "[I]n situations where, as here, the labor contract imposes a duty upon the defendant to make the statements that are alleged to be defamatory, courts have repeatedly held that plaintiff's defamation claims are pre-empted." Caci v. Laborers Intern. Union of North America, 2000 WL 387599, at *3 (W.D.N.Y. Mar. 31, 2000) (citing Johnson v. Anheuser Bush, Inc., 876 F.2d 620 (8th Cir.1989); Peek v. Philadelphia Coca-Cola Bottling Co., 1997 WL 399379 (E.D.Pa. Jul. 10, 1997) (finding claims preempted where allegedly defamatory statements "overwhelmingly relate[d] to conduct that formed the substance of plaintiff's grievance and arbitration proceedings")). As to Blauvelt, the court exercises its supplemental jurisdiction, *see infra*, over the claim. *See* Meier, 371 F.Supp.2d at 245-46.

### 3.    Tortious Interference with Contract

As his third cause of action, Korthas asserts a claim of tortious interference with contract. Korthas confines his allegations to Blauvelt alleging that "Blauvelt had knowledge of the . . . contractual relationship between [Korthas] and Automatic Rolls . . . [, and that] Blauvelt intentionally and willfully interfered with said contract by improper means," which caused his termination. Dkt. No 6, Am. Compl. at ¶¶ 27-29. The elements of a tortious interference with

contract claim are well established: "the existence of a valid contract, the tortfeasor's knowledge of the contract and intentional interference with it, the resulting breach and damages." Hoag v. Chancellor, Inc., 246 A.D.2d 224, 228, 677 N.Y.S.2d 531, 533 (1st Dep't 1998); *see also* Anderson v. Aset Corp., 329 F.Supp.2d 380, 382 (W.D.N.Y. 2004) (explaining that to prevail on a claim for tortious interference with contract, "a plaintiff must show: "(1) the existence of a valid contract between himself and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional inducement of the third party to breach that contract, and (4) damages."), *aff'd* 416 F.3d 170.

    To prove his claim, Korthas would have to show that the CBA is valid, that Blauvelt induced (or conspired to induce) Northeast Foods to breach his employment contract–the CBA, and that the CBA was breached.  As explained in Cespuglio v. Ward,

> A tortious interference with contract claim, by necessity, presumes a breach of contract.  An adjudication of the tort claim therefore requires the court to inquire about that breach –what duties did the contract create? Did the parties to the contract fulfill those duties?  If not, was the failure of one side to fulfill its duty caused by the defendant?  It is hard to imagine a situation where a claim for tortious interference with a [CBA] will not implicate the provisions of that agreement.  Accordingly, Cespuglio's claim–though framed as a state law claim for tortious interference with contract–is really a claim under section 301, and federal jurisdiction is proper.

2004 WL 1088235, at *4 (S.D.N.Y. May 13, 2004) (footnote omitted); *see also* Baylis v. Marriott Corp., 906 F.2d 874, 877 (2d Cir.1990) ("Under traditional principles of New York law, a party may not recover for tortious inducement of breach of a contract without proving that the underlying contract has been breached."); Meier, 371 F.Supp.2d at 246 (finding plaintiff's tortious interference with contract claim completely preempted by § 301 of the LMRA where the only employment contract between plaintiff and defendant was a CBA); Amendolare v. Schenkers International Forwarders, Inc., 747 F.Supp. 162, 172 (E.D.N.Y. 1990) (claims for, *inter alia*, breach of contract and tortious interference with contract preempted by § 301 of the LMRA); Dragone v. M.J. Raynes,

Inc., 695 F.Supp. 720, 723-724 (S.D.N.Y. 1988) (holding that union member's tortious interference with contract claim for discharge implicated CBA and was therefore preempted because plaintiff "must prove that the Agreement was valid and that the Agreement was breached").  Accordingly, resolution of Korthas' claims would require interpretation of the CBA, and those claims as to all defendants are therefore preempted by § 301 of the LMRA.  See Aset Corp. 329 F.Supp.2d at 328-83.

### 4.   Malicious Prosecution

As his fourth cause of action, Korthas asserts that he was "charged with harassment by actions of the defendants" but was not convicted.  Korthas alleges, "upon information and belief," that defendants "knew that there was no reasonable belief that [Korthas] had threatened anyone" and that "defendants acted with malice toward [Korthas] having him arrested."  Dkt. No. 6, Am. Compl. at ¶¶ 31-34.  Korthas asserts that the "criminal charge was dismissed on the merits on May 20, 2002."  Id. at ¶ 32A.  Additionally, Korthas alleged that "[u]pon information and belief, Northeast Foods, Inc., through its agents, did place an emergency call to the Auburn Police Department alleging that [Korthas] was threatening co-workers with a pocket knife."  Korthas asserts that his prosecution for harassment was caused by the actions of Blauvelt, see id. at ¶ 16, who apparently received help from the Automatic Rolls management and who signed the information.  See Dkt. No. 7, Pl.'s Mem. of Law at 2-3; Dkt. No. 9, Korthas Aff. at Ex. A.

To sustain a claim for malicious prosecution, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  Russell v. Smith, 68 F.3d 33, 36 (2d Cir.1995).  The first two elements do not require an interpretation of the CBA as to any defendant.  Korthas must prove that defendants did not have knowledge of sufficient facts to support probable cause for a

harassment complaint, and that they made the complaint with actual malice.

Proof of Blauvelt's subjective knowledge and motive does not require an interpretation of the CBA and Korthas' claim for malicious prosecution against Blauvelt is not preempted by the LMRA.  *See* Foy v. Giant Foods Inc., 298 F.3d 284, 289 (4th Cir. 2002).  Thus, as to Blauvelt, the court exercises its supplemental jurisdiction, *see infra*, over the claim.  *See* Meier, 371 F.Supp.2d at 245-46.  The same, however, cannot be said of Korthas' claim as to Northeast Foods.

Although Northeast Foods did not initiate the harassment complaint against him, Korthas maintains that Northeast Foods is liable for malicious prosecution because it rendered assistance to Blauvelt in effecting the harassment charge.  The court assumes *arguendo* that Korthas' allegations suggest that Northeast Foods voluntarily aided or participated in the prosecution of the harassment assault complaint.  In assuming *arguendo* that Northeast Foods aided or participated in the prosecution, however, the court can only conclude the malicious prosecution claim against Northeast Foods would be preempted by the LMRA because proof that Northeast Foods acted with malice would require interpreting the CBA. The Second Circuit defines malice for purposes of a malicious prosecution claim as a "wrong or improper motive, something other than a desire to see the ends of justice served." Lowth, 82 F.3d at 573 (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 406 N.Y.S.2d 443, 445, 377 N.E.2d 975 (1978)).  Northeast Foods could not act with an improper motive if it was authorized by the CBA to contact the Police or discharge or otherwise discipline Korthas as a result of the harassment complaint.  Ascertaining whether Northeast Foods was so authorized requires an interpretation of the CBA and Korthas' malicious prosecution claim as to Northeast Foods is preempted by § 301 of the LMRA.

### 5.   False Imprisonment

As his fifth cause of action, Korthas alleges that defendants "had [him] confined first at [Automatic Rolls'] office and then at [P]olice headquarters" and "was not allowed to leave either

location," that he was "handcuffed the entire time," and that the handcuffs were tightened such that he suffered physical injury.  Dkt. No 6, Am. Compl. at ¶¶ 37-40.  "Under New York law, the elements of a false imprisonment [or false arrest] claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged . . . A favorable termination of the proceedings is not an element of this tort.  Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) (citations, internal quotation marks and emphasis omitted).

Based upon his allegations, the court can only conclude: (1) that Korthas attributes liability to Blauvelt because of his reporting the threat to his superiors and (2) that Korthas attributes liability to Northeast Foods because it called the Police upon learning of the threat.  As an initial observation, the court agrees with defendant's argument that Korthas' allegations suggest that his false imprisonment claim properly lies against the Police who were responsible for Korthas' confinement and handcuffing.  Nonetheless, to any extent Korthas has asserted a false imprisonment claim against defendants, the court finds that proof of defendants' intent to confine him and proof that he was aware of and did not consent to the confinement would not require an interpretation of the CBA. Whether the alleged confinement was privileged, however, requires an interpretation of the CBA in light of Northeast Foods' duty to provide its employees with a safe work environment and to ensure industrial peace.  Therefore, § 301 of the LMRA preempts Korthas' false imprisonment claim as to Northeast Foods.  As to Blauvelt, however, the court finds that resolution of the false imprisonment claim is not substantially dependent on analysis of the CBA, and consequently the court exercises its supplemental jurisdiction, *see infra*, over the claim.

### 6.    Additional Considerations

The injuries Korthas allegedly suffered and the relief he seeks also indicate that his claims require an interpretation of the CBA, and arguably reveal his third attempt to challenge the

legitimacy of his discharge.  In his second and third causes of action, Korthas claims that the alleged defamation and tortious interference with contract *caused* his termination.  *See* Dkt. No 6, Am. Compl. at ¶¶ 24, 29.  Furthermore, in his prayer for relief, Korthas requests compensation for, *inter alia*, lost wages and benefits.  *See* id. at ¶ 42.  These alleged injuries and damages are easily traced to Northeast Foods' termination of Korthas' employment, which he has already twice unsuccessfully challenged.  Korthas argues that he "commenced this action seeking redress not for [his] termination but for the malicious prosecution and other intentional torts committed against him by . . . Blauvelt with the apparent help from Automatic Rolls management."  *See* Dkt. No. 7, Pl.'s Mem. of Law at 2.  Korthas' complaint, however, "says what it says, and a memorandum of law is not a proper vehicle for rewriting or amending the complaint."  Aset Corp., 329 F.Supp.2d at 383 (citing Dawson v. Bumble & Bumble, 246 F.Supp.2d 301, 316 (S.D.N.Y.2003) ("Dawson's purported clarification effectively endeavors to rewrite or amend the Complaint through her opposition brief, a procedure not permitted by the Federal Rules").

      *E.*    *Korthas' Claims are Time-Barred under § 301*

Having found all of Korthas' claims as to Northeast Foods preempted by § 301 of the LMRA, the court turns to the applicable statute of limitations.  Section 301 does not contain a statute of limitations period.  Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir.1998); *see also* Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 697-98, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).  "Because there is no statute of limitations prescribed under § 301, courts typically apply the most closely analogous state statute of limitations to § 301 claims."  United Auto. Aerospace and Agric. Implement Workers of America, Local 33, v. R.E. Dietz Co., 996 F.2d 592, 596 (2d Cir. 1993) (citing Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704-05, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966)).  Defendants argue that

pursuant to <u>R.E. Dietz Co.</u>, a six-month statute of limitations applies and the court agrees. <u>R.E. Dietz Co.</u> explains that the statute of limitations for "hybrid" claims involving allegations against both the employer and employee's union or claims against the employer where the relevant CBA contains an arbitration clause is six months. *See* <u>R.E. Dietz Co.</u>, 996 F.2d at 596 (explaining that after the Supreme Court's decision in <u>Del Costello v. International Bhd. of Teamsters</u>, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294-95, 76 L.Ed.2d 476 (1982), the Second Circuit held in <u>McKee v. Transco Products, Inc.</u>, 874 F.2d 83, 85-86 (2d Cir.1989) that the mere presence of an arbitration clause is sufficient to render an employee's claim a hybrid claim and subject it to the six-month statute of limitations).

Although Korthas filed charges with the NLRB, against both Northeast Foods and his Union, here he limited his claims to Northeast Foods. The CBA at issue, however, contains an arbitration clause at Article IX, *see* Dkt. No 5, Ex. B, whereby the court defines Korthas' allegations as a hybrid claim. <u>McKee</u>, 874 F.2d 85-86. The claims set forth in Korthas' complaint arose on March 26, 2002; therefore, Korthas had until September 26, 2002, to file his complaint. Korthas, however, did not file his complaint in state court until March 20, 2003. Therefore, because all of Korthas' claims as to Northeast Foods are preempted by § 301 of the LMRA, they are also time-barred by the applicable six-month statute of limitations. Summary judgment is GRANTED as to Northeast Foods' § 301 LMRA preemption argument and Korthas' claims are hereby DISMISSED.

## V.     Plaintiff's Claims Under the NLRA

Defendants also argue that Korthas' claims are preempted by the NLRA. The NLRA, which governs labor-management relations in the private sector, contains no express preemption provision. <u>Bldg. & Const. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.</u>, 507 U.S. 218, 224, 113 S.Ct. 1190, 1194, 122 L.Ed.2d 565 (1993) ("<u>Boston Harbor</u>"). Nonetheless, in 1986 the Supreme Court declared, "[i]t is by now a commonplace that

in passing the NLRA Congress largely displaced state regulation of industrial relations." <u>Wisconsin</u>

<u>Dep't of Indus. v. Gould Inc.</u>, 475 U.S. 282, 286, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986).  This is

consistent with the presumption under the Supremacy Clause "in favor of preemption in fields that

are inherently federal in character and that the states have not traditionally occupied." <u>Drake v.</u>

<u>Laboratory Corp. of America Holdings</u>, 290 F.Supp.2d 352, 363-64 (E.D.N.Y.2003) (citing

<u>Buckman Co. v. Plaintiffs' Legal Comm.</u>, 531 U.S. 341, 347, 121 S.Ct. 1012, 148 L.Ed.2d 854

(2001)).  Two distinct lines of preemption jurisprudence have emerged under the NLRA, but in the

case at bar, the court need only examine one such line.

The first line of NLRA preemption, <u>Garmon</u>[3] preemption, "developed from a line of cases

that focused on the primary jurisdiction of the NLRB." <u>New England Health Care, Employees</u>

<u>Union, District 1199, SEIU/AFL-CIO v. Rowland</u>, 221 F.Supp.2d 297, 324 (D.Conn. 2002) (citation

omitted).  It "corresponds to the actual conflict category of general preemption theory[.]"

<u>Aeroground, Inc. v. City and County of San Francisco</u>, 170 F.Supp.2d 950, 955 (N.D.Cal. 2001)

(citation omitted).  "Sections 7[4] and 8[5] of the [NRLA] regulate 'concerted activities' and 'unfair

---

[3]<u>San Diego Bldg. Trades Council v. Garmon</u>, 359 U.S. 236, 246, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959).

[4]Section 7 of the NLRA enumerates the "[r]ight of employees as to organization, collective bargaining, etc." 29 U.S.C. § 157.  It reads as follows:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

<u>Id.</u>

[5]Section 7 of the NLRA provides:

The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

29 U.S.C. § 158(c).

labor practices,' respectively, seeking to protect the former and stamp out the latter." <u>Building Trades Employers' Ass'n v. McGowan</u>, 311 F.3d 501, 508 (2d Cir.2002) (citing 29 U.S.C. §§ 157, 158 (codifying § 7 and § 8 of the NLRA)) (footnotes added). "'<u>Garmon</u> pre-emption,' . . . forbids state and local regulation of activities that are 'protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8." <u>Boston Harbor</u>, 507 U.S. at 224, 113 S.Ct. at 1194 (internal quotation marks and citations omitted). <u>Garmon</u> preemption is relatively broad in that it "prohibits regulation even of activities that the NLRA only arguably protects or prohibits." <u>Id.</u> (citation omitted). The purpose of <u>Garmon</u> preemption is "to prevent conflict between, on the one hand, state and local regulation and, on the other, Congress' integrated scheme of regulation, . . . embodied in §§ 7 and 8 of the NLRA, which includes the choice of the NLRB, rather than state or federal courts, as the appropriate body to implement the Act." <u>Boston Harbor</u>, 507 U.S. at 225, 113 S.Ct. at 1194-95 (internal quotation marks and citations omitted). There are, however, two exceptions to <u>Garmon</u> preemption: (1) "where the activity regulated was a merely peripheral concern of the [LMRA]" and (2) "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [it] could not be infer[red] that Congress had the States of the power to act." <u>Garmon</u> 359 U.S. at 244, 79 S.Ct. at 779. These exceptions underscore the court's responsibility "to determine the scope of the general rule by examining the state interests in regulating the conduct in question and the potential for interference with the federal regulatory scheme." <u>Farmer v. United Bhd. of Carpenters & Joiners of America, Local 25</u>, 430 U.S. 290, 297, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).

In his charge to the NLRB, Korthas alleged that Northeast Foods called the Police, had him removed from company property, and terminated his employment "because he engaged in protected concerted activity, including expressing objections to the new owners retaining the predecessor's supervisors who treat employees unfairly." Dkt. No. 5, at Ex. D. In its response, the NLRB limited

its focus to the alleged "protected concerted . . . union activity" and concluded that rather than retaliating for such protected union activity, Northeast Foods "acted out of concern for the safety and welfare of its workforce after it had received information that [Korthas was] displaying a knife in a menacing fashion and after employees reported that [Korthas] had made threatening statements to do harm to others." Dkt. No. 5, at Ex. E. Clearly, the NLRB addressed the facts underlying Korthas' common law tort claims in its dismissal of Korthas' Charge, but it did not address those facts in the context of Korthas' intentional infliction of emotional distress, defamation, malicious prosecution and false imprisonment claims. The Ninth Circuit recently cautioned in Radcliffe v. Rainbow Construction, 254 F.3d 772, 785 (9th Cir. 2001), that "false arrest, false imprisonment, and malicious prosecution are similar to torts of threatened violence, traditionally held not to be preempted, or intentional infliction of emotional distress, and defamation, both of which the Supreme Court has held to be excepted from Garmon's preemption rule even though they involve conduct arguably protected or prohibited by the NLRA." Moore v. City of New York, 219 F.Supp.2d 335, 338 (E.D.N.Y. 2002). Korthas' claims for intentional infliction of emotional distress, defamation, malicious prosecution and false imprisonment touch upon areas historically governed by local law and are excepted from Garmon's preemption rule; accordingly, summary judgment is DENIED with respect to those claims.

The court, however, agrees with defendants that the NLRA preempts Korthas' tortious interference with contract claim. *See* Local 926, Int'l Union of Operating Engineers v. Jones, 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983) (claim against union for coercing employer to breach employment contract preempted by NLRA); Volentine v. Bechtel, Inc., 27 F.Supp.2d 728, 736 (E.D.Tex. 1998) ("[T]o permit Plaintiffs' state-law claims for tortious interference with contract and conspiracy to tortiously interfere with contract to proceed would violate the very core of Garmon–namely, to permit discordant state-law claims to disrupt the uniform application of federal

labor law across the nation . . . ."); <u>Board of Trustees of Sheet Metal Workers Local Union No. 137 Ins. v. Silverstein</u>, 1995 WL 404873 (S.D.N.Y. 1995) (tort claim against union for engaging in concerted action which interferes with an employer's contractual relations with customers preempted by NLRA); *see also* <u>Kaufman v. Allied Pilots Ass'n</u>, 274 F.3d 197, 204 (5th Cir. 2001) (dismissing plaintiff's state law tortious interference with contract claim as <u>Garmon</u> preempted).  Accordingly, defendants' motion for summary judgment as to NLRA preemption with regarding Korthas' claim for tortious interference with contract is GRANTED.

**VI.   Plaintiff's Claims on the Merits**

As their final argument, defendants attack Korthas' claims on the merits.  The court has already found Korthas' intentional infliction of emotional distress, defamation, malicious prosecution, and false imprisonment claims as to Northeast Foods preempted by § 301 of the LMRA and time-barred by the applicable statute of limitations.  The court has also already found Korthas' tortious interference with contract claim as to all defendants preempted by both the NLRA and § 301 of the LMRA and time-barred by the applicable statute of limitations.  The question remains whether the court should exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over Korthas' state law claims for intentional infliction of emotional distress, defamation, malicious prosecution, and false imprisonment as to Blauvelt and as to Northeast Foods assuming *arguendo* that any of Korthas' claims as to Northeast Foods are not preempted.

*A.     Supplemental Jurisdiction*

In <u>Valencia ex rel. Franco v. Lee</u>, the Second Circuit set forth factors that a district court should consider when deciding whether to exercise supplemental jurisdiction after all federal law claims have been dismissed from a case.  316 F.3d 299, 305-06 (2d Cir. 2003).  These factors include: (1) whether state law claims implicate the doctrine of preemption; (2) considerations of judicial economy, convenience, fairness, and comity, including the stage of proceedings when the

federal claims are dismissed; (3) the existence of novel or unresolved questions of state law; and (4) whether the state law claims concern the state's interest in the administration of its government or require the balancing of numerous important state government policies.  Id.; *see also* Baylis v. Marriott Corp., 843 F.2d 658, 665 (2d Cir.1988) ("One factor that may sometimes favor retaining pendent jurisdiction is when a state claim is closely tied to questions of federal policy and where the federal doctrine of preemption may be implicated.").

Here, the state law claims implicate the doctrine of preemption and present no novel or unresolved questions of state law.  The court "concludes that the primacy of the preemption questions raised . . . make[s] it appropriate to exercise supplemental jurisdiction."  In re Jetblue Airways Corp. Privacy Litigation, 379 F.Supp.2d 299, 311 (E.D.N.Y. 2005); *see* Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 167 n.4 (2d Cir.1989) ("While not determinative, the implication of federal labor policy and preemption issues would lend support to a decision by the district to exercise pendent jurisdiction over a state law claim."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir.1998) ("Because the remaining state law claims implicate the doctrine of preemption, we cannot say that the district court's exercise of supplemental jurisdiction in this case was an abuse of its discretion.").

B.     *Defamation, Tortious Interference with Contract and False Imprisonment*

Korthas' counsel concedes "that the claims alleging defamation, tortious interference with contract and false imprisonment are insufficient."  Dkt. No. 7, Pl.'s Mem. of Law at 3.  Accordingly, Korthas' claims for defamation, tortious interference with contract and false imprisonment are DISMISSED.

C.     *Intentional Infliction of Emotional Distress*

As noted above, to state a claim of intentional infliction of emotional distress, a plaintiff must establish: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a

causal connection between the conduct and the injury, and (4) severe emotional distress." <u>Bender</u>, 78 F.3d at 790. New York strictly applies each of these elements. <u>Rivera v. City of New York</u>, 392 F.Supp.2d 644, 657-58 (S.D.N.Y. 2005) (citing <u>Howell v. New York Post Co., Inc.</u>, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993)). The bar for an intentional infliction of emotional distress claim is set high such that the conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." <u>Murphy v. American Home Prods. Corp.</u>, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (1983). Here, the court concludes that defendants' alleged conduct, *supra*, is far removed from the type suitable to sustain a claim of intentional infliction of emotional distress and summary judgment is appropriate on this basis.

In addition, the New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available. *See, e.g.*, <u>Fischer v. Maloney</u>, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978). This rule has been consistently applied by lower state courts and federal courts applying New York law. As one federal district court described the matter, in New York, "intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort," when traditional tort remedies are unavailable. *See* <u>EEOC v. Die Fliedermaus, L.L.C.</u>, 77 F.Supp.2d 460, 472 (S.D.N.Y. 1999) (quoting <u>McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.</u>, 256 A.D.2d 269, 682 N.Y.S.2d 167, 169 (1st Dep't 1998)). Accordingly, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." <u>Hansel v. Sheridan</u>, 991 F.Supp. 69, 75 (N.D.N.Y. 1998). In the instant case, because the conduct of which Korthas complains is encompassed within his claims for defamation, tortious interference with contract, malicious prosecution and false imprisonment, his claim for intentional infliction of emotional distress must be dismissed. Defendants' motion for summary judgment dismissing

Korthas' claim for intentional infliction of emotional distress is GRANTED.

      *D.*     *Malicious Prosecution*

      As noted above, to prove his claim of malicious prosecution, Korthas must establish: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Russell v. Smith, 68 F.3d 33, 36 (2d Cir.1995). As noted above, Korthas asserts that he was "charged with harassment by actions of the defendants" but was not convicted. Korthas alleges, "upon in formation and belief," that defendants "knew that there was no reasonable belief that [Korthas] had threatened anyone" and that "defendants acted with malice toward [Korthas] having him arrested." Dkt. No. 6, Am. Compl. at ¶¶ 31-34. Korthas asserts that the "criminal charge was dismissed on the merits on May 20, 2002." Id. at ¶ 32A. Additionally, Korthas alleged that "[u]pon information and belief, Northeast Foods, Inc., through its agents, did place an emergency call to the Auburn Police Department alleging that [Korthas] was threatening co-workers with a pocket knife." Korthas asserts that his prosecution for harassment was caused by the actions of Blauvelt. *See* id. at ¶ 16. Defendants dispute the sufficiency of the allegations with respect to the first, third and fourth elements of malicious prosecution.

      The New York Court of Appeals discussed the first element of malicious prosecution in Broughton v. State: "[t]he essence of malicious prosecution is the perversion of proper legal procedures. Thus, it has been held that some sort of prior judicial proceeding is the *sine qua non* of a cause of action in malicious prosecution. Such a judicial proceeding may be either an evaluation by a Magistrate of an affidavit supporting an arrest warrant application, or an arraignment or an indictment by a Grand Jury." 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 93-94 (1975) (citation omitted). Thus, a malicious prosecution "may arise only after an arraignment or indictment or some

other 'evaluation by a neutral body that the charges [were] warranted.'" <u>Stile v. City of New York</u>, 172 A.D.2d 743, 743, 569 N.Y.S.2d 129 (2d Dep't 1991) (quoting <u>Broughton</u>, 37 N.Y.2d at 459).

Here, Korthas' Amended Complaint does not allege that Korthas was arraigned, indicted, or that an arrest warrant was evaluated by a Magistrate.  The closest Korthas comes to making such an allegation is an argument in his memorandum of law where he states that "Blauvelt was not performing any duty prescribed by his union when he signed the accusatory instrument."  Dkt. No. 7, Pl.'s Mem. of Law at 2-3.  Korthas points to no holding by any court that the first element of a civil claim for malicious prosecution is satisfied when a complaint is sworn to or the accusatory instrument is signed by the complaining party.  "Thus, under the New York decisions, the threshold trigger for the tort of malicious prosecution is a *judicial proceeding* where the charges against the accused are reviewed and evaluated by a neutral body."  <u>Silver v. Kuehbeck</u>, 2005 WL 2990642, at *5 (S.D.N.Y. Nov. 7, 2005) (citing <u>Broughton</u>, 37 N.Y.2d at 459).  A Magistrate's evaluation of an affidavit supporting an arrest warrant application, an arraignment, and an indictment by a Grand Jury each involve some kind of "evaluation by a neutral body that the charges [were] warranted." <u>Stile</u>, 172 A.D.2d 743.  The pleading in the sworn information/complaint against Korthas does not reveal any evaluation by a neutral body. *See* <u>Silver</u>, 2005 WL 2990642, at *6.  Moreover, "a civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution." <u>Levy v. Grandone</u>, 14 A.D.3d 660, 661, 789 N.Y.S.2d 291, 293 (2d Dep't 2005) (citations omitted); *see also* <u>DeFilippo v. County of Nassau</u>, 183 A.D.2d 695, 696, 583 N.Y.S.2d 283, 284 (2d Dep't 1992) ("The mere reporting of a crime to police and giving testimony are insufficient; it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.") (citation omitted).  Accordingly, the court finds that Korthas

has failed to establish that defendants initiated or continued a criminal prosecution against him. Furthermore, Korthas has not established that defendants lacked probable cause or acted maliciously in contacting the Police regarding his conduct. Defendants' motion for summary judgment dismissing Korthas' claim for malicious prosecution is GRANTED.

## CONCLUSION

**WHEREFORE,** after careful consideration of the file in this matter including the parties' submissions, oral argument, and the applicable law, the court hereby

**GRANTS** Korthas' motion to amend his complaint and further

**DENIES** Korthas' motion to remand the case to state court and further

**GRANTS** defendants' motion for summary judgment and **DISMISSES** Korthas' Amended Complaint in its entirety.

**IT IS SO ORDERED.**

Dated: February 27, 2006
Syracuse, New York

Howard G. Munson
Senior  U.S. District Judge

30